Case No. 24-3141
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

TAMORI MORGAN,
Defendant-Appellee.
_____

**On Appeal from the United States District Court
For the District of Kansas (Wichita)
The Honorable Judge John W. Broomes
Case No. 6:23-cr-10047-JWB-1**
_____

APPELLEE'S SUPPLEMENTAL APPENDIX
_____

| | |
|---|---|
| Kansas Federal Public Defender | MELODY BRANNON |
| U.S. Courthouse | Federal Public Defender |
| 500 State Avenue, Suite 201 | |
| Kansas City, KS 66101 | DANIEL T. HANSMEIER |
| Telephone: (913) 551-6712 | Appellate Chief |
| Fax: (913) 551-6562 | |
| Email: daniel_hansmeier@fd.org | Attorneys for Appellee |
| | TAMORI MORGAN |

TABLE OF CONTENTS

Reply to Response to Motion to Dismiss (D.E. 29).................................................... Appendix 3

**In the United States District Court
for the District of Kansas**

---

**United States of America**,
        Plaintiff,

v.                                                            Case No. 23-10047-01 JWB

**Tamori Morgan**,
        Defendant.

---

**Reply to Government's Response to Motion to Dismiss
Counts 1 and 2 on Second Amendment Grounds**

---

    Tamori Morgan moved this Court to dismiss Counts 1 and 2 of the Indictment because 18 U.S.C. § 922(o) offends the history and tradition of the Second Amendment of the United States Constitution by imposing a blanket prohibition on machine guns that is both facially unconstitutional and unconstitutional as-applied to Mr. Morgan. D.E. 26. The government responded in two parts. D.E. 27 and 28. Mr. Morgan replies to each part. First, that machineguns are protected by the Second Amendment. Second, the government has failed to meet its burden to prove that the complete machinegun ban established by 18 U.S.C. § 922(o) is consistent with this Nation's historical tradition of firearm regulation.

### I. The Second Amendment protects the right to keep and bear machineguns

The Second Amended provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. CONST. amend. II. This amendment confers an individual right to keep and bear (or carry) arms. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *United States v. Cox*, 906 F.3d 1170, 1184 (10th Cir. 2018). As we explain below, machineguns are arms within the meaning of the Second Amendment.

The government does not cite any authority from the Supreme Court or the Tenth Circuit holding that machineguns fall outside the reach of the Second Amendment. First, it argues this Court should find that machineguns are not protected by the Second Amendment "in light of binding Supreme Court precedent holding that the Second Amendment protects only those weapons in common use by private citizens at the time of its enactment." D.E. 28 at 6. But the government's common-use-at-enactment analysis is wrong, and it cites no Supreme Court holding that machineguns fall outside the Second Amendment's protection. Second, it asks this Court to rely on "numerous federal appeals courts," D.E. 28 at 6, but cites no binding authority in the Tenth Circuit and offers no discussion of why this Court should find any out of Circuit analysis persuasive.

### A. The government incorrectly interprets *Heller*

The government asks this Court to apply the "notion," D.E. 28 at 4, it infers from *Heller*, that "the Second Amendment protects only those weapons 'in common use' by private citizens at the time of its enactment.'" D.E. 28 at 6. The Supreme Court

2

has already rejected the common-use-at-enactment interpretation of *Heller* and this Court should too.

In *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curium), the Supreme Court vacated a decision by the Supreme Judicial Court of Massachusetts because "the explanation the Massachusetts court offered for upholding [a ban on stun guns] contradicts this Court's precedent." *Id.* at 412. The Massachusetts Court errantly relied on *Heller*'s common usage clause explaining, in its view, "stun guns are not protected because they were not in common use at the time of the Second Amendment's enactment." *Id*. The Supreme Court clearly held that analysis is "inconsistent with *Heller*'s clear statement that the Second Amendment 'extends…to…arms…that were not in existence at the time of the founding.'" *Id.* at 412 (quoting 554 U.S. at 582). For the same reason, this Court should find that the government's argument that "the Second Amendment protects only those weapons in common use by private citizens at the time of its enactment," D.E. 28 at 6, is inconsistent with *Heller*. *See Id.* at 416 (J. Alito & J. Thomas concurring) ("In *Heller,* we emphatically rejected such a formulation. We found the argument that only those arms in existence in the 18th century are protected by the Second Amendment not merely wrong, but bordering on the frivolous.").

Indeed, there is reason to doubt that any "common use" formulation – at enactment or today – is the appropriate framework to determine arms protected by the Second Amendment. The dissent's reasoning in *Heller* is prescient:

> Nor is it at all clear to me how the majority decides *which* loaded "arms" a homeowner may keep. The majority says that that Amendment protects those weapons "typically possessed by law-

3

> abiding citizens for lawful purposes." *Ante,* at 2816. This definition conveniently excludes machineguns, but permits handguns, which the majority describes as "the most popular weapon chosen by Americans for self-defense in the home." *Ante,* at 2818; see also *ante,* at 2816 – 2817. But what sense does this approach make? According to the majority's reasoning, if Congress and the States lift restrictions on the possession and use of machineguns, and people buy machineguns to protect their homes, the Court will have to reverse course and find that the Second Amendment *does,* in fact, protect the individual self-defense-related right to possess a machinegun. On the majority's reasoning, if tomorrow someone invents a particularly useful, highly dangerous self-defense weapon, Congress and the States had better ban it immediately, for once it becomes popular Congress will no longer possess the constitutional authority to do so. In essence, the majority determines what regulations are permissible by looking to see what existing regulations permit. There is no basis for believing that the Framers intended such circular reasoning.

*Heller,* 554 U.S. at 720–21 (J. Breyer, J. Stevens, J. Souter, and J. Ginsberg, dissenting). There are over 740,000 legally registered machineguns in the United States today.[1] The Firearm Owners Protection Act (FOPA),[2] passed in 1986, generally prohibits civilian possession of any machinegun that was not registered before May 19, 1986. If the machinegun was not registered before the deadline, it generally cannot be legally owned by a private citizen. Thus, by passing FOPA, Congress regulated these Arms into obscurity. It is circular to rely on the artificial obscurity created by Congress' ongoing 37-year-old regulation to establish machineguns are now somehow less than common.

---

[1] Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States – Annual Statistical Update 2021.* https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download

[2] Public Law 99-308. https://www.govinfo.gov/content/pkg/STATUTE-100/pdf/STATUTE-100-Pg449.pdf#page=3

4

Instead, the Supreme Court might apply a "conjunctive" test, specifically that "a weapon may not be banned unless it is both dangerous and unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (J. Alito and J. Thomas, concurring). Under this test, the government may not promulgate a blanket ban on machineguns like § 922(o) unless it demonstrates machineguns are dangerous and unusual. *Id*. The government has failed to argue, much less met its burden to prove, that machineguns meet this conjunctive definition and are subject to regulation.

**B. The government's out-of-circuit authority is unpersuasive**

In place of analysis, the government points to a handful of out-of-circuit decisions purportedly holding that machineguns are beyond the reach of the Second Amendment. D.E. 28 at 5-6.[3] But the most recent of those cited cases was decided in 2015, well before the Supreme Court decided *Bruen* in 2022. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Thus, the analysis in each of those out of Circuit cases predates the Supreme Court's newly announced "historical approach." *Id*. And to whatever extent "*Bruen* emphasized the narrow scope of its holding," and "nothing in *Bruen* disturbed *Miller* or *Heller*," D.E. 28 at 4, neither *Heller* nor *Miller* held that machineguns were outside the realm of Second Amendment protection.

---

[3] The government also cites a non-binding 10th Circuit concurrence authored by Judge Lucero. The majority did not address the issue and Judge Lucero provided no analysis on this point.

II. **As machineguns are Arms within the meaning of the Second Amendment, the government fails to meet its burden to prove banning them is consistent with this Nation's historical tradition of firearm regulation**

The government concedes *Bruen*'s "straightforward historical inquiry" is appropriate. D.E. 28 at 7. Thus, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26 (2022). The government fails to identify a "distinctly similar historical regulation." *Id*. Instead, the government points to an English common law and a historical American law, but the plain text of each of those historical regulations is not distinctly similar to the complete ban imposed by 18 U.S.C. § 922(o). Therefore, the government fails its burden to establish its machinegun ban is consistent with this Nation's historical tradition of firearm regulation.

First, the government relies on an English common law which created "the offense of riding or going armed, with dangerous or usual weapons," D.E. 28 at 7. This English common law's prefatory clause, "riding or going," is not distinctly similar to 18 U.S.C. § 922(o) because § 922(o) "extends…to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family, would fail constitutional muster." *Heller*, 554 U.S. at 628–29.

Second, the government relies on a historical American law which created an offense for an individual who "arms himself with dangerous and unusual weapons, in such manner as will naturally cause a terror to the people." D.E. 28 at 7. This historical American law's "in such manner" clause is not distinctly similar to 18 U.S.C. § 922(o), because § 922(o) bans the possession of machineguns in any manner whatsoever.

As to both of these historical regulations, that the societal concern surrounding the idea of persons bearing certain types of arms was addressed "through materially different means," in the case of these two laws by place and manner restrictions, it is further evidence the modern regulation is unconstitutional. *Bruen*, 142 S. Ct. at 2131.

Before concluding its response, the government misguidedly returns to its common use argument to support its burden to prove a historical tradition of regulation. D.E. 28 at 8. The government argues, "*Bruen* reaffirmed *Heller's* finding that there is a 'fairly supported' 'historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id*. (quoting *Bruen*,142 S. Ct. at 2128).[4] This argument is misplaced in the historical-tradition analysis. The quoted discussion in *Bruen* is better understood in context. This quote appears in Section 1 of the Supreme Court's opinion "to show why *Heller* does not support applying means-end scrutiny." *Bruen*, 597 U.S. 1, 19.

> "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and

---

[4] *Bruen*, 597 U.S. 1, 21.

carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Ibid.* For example, we found it "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" that the Second Amendment protects the possession and use of weapons that are "in common use at the time." *Id.*, at 627, 128 S.Ct. 2783 (first citing 4 W. Blackstone, Commentaries on the Laws of England 148–149 (1769); then quoting *United States v. Miller*, 307 U.S. 174, 179, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)).

*Bruen*, 597 U.S. 1, 21. Here, the Court was summarizing its analysis in *Heller* about whether the Second Amended protected "any weapon" or a subset of weapons. As discussed above, whether a weapon is "dangerous and usual" might be the standard to measure *Bruen*'s first step (whether a regulation is presumptively protected by the Second Amendment's plain language – "Arms"), but it's not the standard in the second step. Rather, in the second step the government must identify a "distinctly similar historical regulation." 597 U.S. 1, 26. Of course, *Bruen*'s second step was not announced when *Heller* was decided.

But, misplaced or not, the government does not meet its burden to prove machineguns meet the conjunctive dangerous and unusual test. *Caetano*, 577 U.S. at 417 (J. Alito and J. Thomas, concurring). The government hollowly announces an unspecified "variety of historical resources" and "universal[] regard[]" support its position. D.E. 28 at 8-9. Neither is evidence of a historical tradition. Thus, the government's common use argument should be rejected.

### III. Conclusion

For the reasons set forth in his Motion to Dismiss Counts 1 and 2, D.E. 26, this Court should declare § 922(o) unconstitutional and dismiss Counts 1 and 2 of the Indictment.

Respectfully submitted,

s/David J. Freund
DAVID J. FREUND
Sup. Ct. No. 17736
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: 316-269-6445
Fax:  316-269-6175
Email: david_freund@fd.org

### **Certificate of Service**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on December 26, 2023, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Aaron Smith
Assistant United States Attorney
Aaron.Smith3@usdoj.gov

s/David J. Freund
DAVID J. FREUND # 17736

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 12, 2025, he electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. Because opposing counsel is a registered CM/ECF user, he will be served by the CM/ECF system. 10th Cir. R. 31.5.

s/ Daniel Hansmeier
DANIEL HANSMEIER
Appellate Chief
