# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

TAMORI MORGAN,
Defendant-Appellee.

**On Appeal from the United States District Court
For the District of Kansas (Wichita)
The Honorable Judge John W. Broomes
Case No. 6:23-cr-10047-JWB-1**

APPELLEE'S RESPONSE BRIEF

Kansas Federal Public Defender
U.S. Courthouse
500 State Avenue, Suite 201
Kansas City, KS 66101
Telephone: (913) 551-6712
Fax: (913) 551-6562
Email: daniel_hansmeier@fd.org

MELODY BRANNON
Federal Public Defender

DANIEL T. HANSMEIER
Appellate Chief

Attorneys for Appellee
TAMORI MORGAN

Oral Argument Requested

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES............................................................................iii

PRIOR OR RELATED APPEALS...................................................................................vii

ISSUE PRESENTED FOR REVIEW.................................................................................1

This government appeal involves a successful as-applied Second Amendment challenge to the federal machinegun-possession prohibition, 18 U.S.C. § 922(o)(1). This Court must resolve whether the district court erred when it concluded that: (1) Tamori Morgan's handheld machineguns are protected by the Second Amendment; and (2) the government failed to meet its burden to prove that section 922(o)(1) is consistent with this Nation's historical tradition of regulating firearms, as applied to Morgan's handheld machineguns.

STATEMENT OF THE CASE............................................................................................2

A. The Indictment......................................................................................................2
B. The Motion to Dismiss .........................................................................................2
C. The Order Granting the Motion to Dismiss .........................................................5

SUMMARY OF THE ARGUMENT ..................................................................................8

ARGUMENT ...............................................................................................................12

The district court correctly held that: (1) the Second Amendment's plain text protects Mr. Morgan's handheld machineguns; and (2) the government failed to meet its burden to prove that section 922(o)(1) is consistent with this Nation's historical tradition of regulating firearms, as applied to Morgan's handheld machineguns.

...............................................12
    A. Issue Raised and Ruled On.............................................................................12
    B. Standard of Review..........................................................................................13
    C. Legal Background ............................................................................................14
    D. Discussion........................................................................................................19
        1. Mr. Morgan's handheld machineguns are "arms" under the Second
           Amendment's plain text..........................................................................22
            a. The government has waived any reliance on dicta from Heller. If not, the
               argument is unpersuasive. ..............................................................23
            b. The government has waived its new legal theory because it hasn't argued
               plain error on appeal. ......................................................................27
            c. If not waived, the government's new legal theory is unpersuasive..................29
        2. The government has failed to meet its burden to establish that section
           922(o)(1)'s prohibition against the possession of Mr. Morgan's handheld
           machineguns is consistent with this Nation's history of firearm regulation..........36

a. Under the historical record compiled below, the government failed to meet its burden to establish that section 922(o)(1) is consistent with this Nation's historical tradition of firearm regulation. ..............................................38

b. Even if this Court considers the government's new evidence, it should still affirm. ..............................................................................................................43

CONCLUSION ...........................................................................................................47

ORAL ARGUMENT STATEMENT.........................................................................47

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .......................................48

CERTIFICATE OF SERVICE .................................................................................48

# TABLE OF CASES AND AUTHORITIES

## Cases

*Allen v. Minnstar, Inc.*, 8 F.3d 1470 (10th Cir. 1993)................................................. 10, 37

*Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020) ...................................44

*Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019)...................................43

*Bedolla-Zarate v. Sessions*, 892 F.3d 1137 (10th Cir. 2018) ...................................44

*Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068 (10th Cir. 2024) ................ 13, 14, 28

*Bliss v. Kentucky*, 12 Ky. 90 (Ky. 1822) ...................................45

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ...........................................3, 17, 27, 43

*Clark v. Colbert*, 895 F.3d 1258 (10th Cir. 2018)...................................24

*Cohens v. State of Virginia*, 19 U.S. 264 (1821)...................................27

*Cummings v. Dean*, 913 F.3d 1227 (10th Cir. 2019) ...................................24

*District of Columbia v. Heller*, 554 U.S. 570 (2008) 3, 6, 8, 11, 15-17, 21-23, 25-27, 30-31, 33, 37-38

*Eisenhour v. Cnty.*, 897 F.3d 1272 (10th Cir. 2018) ...................................24

*Evanston Ins. Co. v. L. Off. of Michael P. Medved, P.C.*, 890 F.3d 1195 (10th Cir. 2018) ..............28

*Fleming v. Gulf Oil Corp.*, 547 F.2d 908 (10th Cir. 1977)......................................... 10, 37

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015)............................................. 32, 34

*Friedman v. City of Highland Park, Ill.*, 136 S. Ct. 447 (2015)................................................31, 32, 42

*Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613 (10th Cir. 1998) ....................................24

*Gale v. City & Cnty. of Denver*, 962 F.3d 1189 (10th Cir. 2020)...................................28

*Garland v. Cargill*, 602 U.S. 406 (2024)...................................41

*Heller v. D.C.*, 670 F.3d 1244 (D.C. Cir. 2011) ....................................................................30

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) ......................................................................42

*Leathers v. Leathers*, 856 F.3d 729 (10th Cir. 2017) ..........................................................23

*Maloney v. Singas*, 351 F. Supp. 3d 222 (E.D.N.Y. 2018) .................................................43

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...........................................................32

*Murrell v. Shalala*, 43 F.3d 1388 (10th Cir. 1994) ..............................................................23

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022)...2-4, 6, 8-11, 17-20, 22, 23, 26-27, 30-31, 35, 37-39, 44-46

*Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264 (10th Cir. 2020) .......................................24

*Richison v. Ernest Grp., Inc.*, 634 F.3d 1123 (10th Cir. 2011)......................................27, 28

*Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024) .........................20, 21, 22, 31

*Sawyers v. Norton*, 962 F.3d 1270 (10th Cir. 2020) ...............................................................9

*Schoenhofer v. McClaskey*, 861 F.3d 1170 (10th Cir. 2017) ...............................................23

*State v. Jumel*, 13 La. Ann. 399 (1858) ...............................................................................45

*State v. Langford*, 3 Hawks 381 (DC 1824)....................................................................38, 39

*Truman v. Orem City*, 1 F.4th 1227 (10th Cir. 2021) ..........................................................28

*United States Daniels*, 124 F.4th 967 (5th Cir. 2025) .........................................................20

*United States v. Amador-Bonilla*, 102 F.4th 1110 (10th Cir. 2024) ...............................10, 37

*United States v. Banks*, 884 F.3d 998 (10th Cir. 2018) ........................................................24

*United States v. Barrera-Landa*, 964 F.3d 912 (10th Cir. 2020) ..........................................27

*United States v. Brown*, ____ F.Supp.3d ____, 2025 WL 429985 (S.D. Miss. Jan. 29, 2025) . 35, 40, 42, 43

*United States v. Chavez*, 976 F.3d 1178 (10th Cir. 2020) ..................................................10

*United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018)...............................................13

*United States v. Egli*, 13 F.4th 1139 (10th Cir. 2021).....................................................35

*United States v. Hale*, 762 F.3d 1214 (10th Cir. 2014)............................................ 14, 28

*United States v. Hernandez*, 847 F.3d 1257 (10th Cir. 2017) ................................... 28, 37

*United States v. Isabella*, 918 F.3d 816 (10th Cir. 2019) .................................................9

*United States v. Jones*, 713 F.3d 336 (7th Cir. 2013) ....................................................36

*United States v. Kearn*, 863 F.3d 1299 (10th Cir. 2017) ...............................................29

*United States v. Landa-Arevalo*, 104 F.4th 1246 (10th Cir. 2024) ........................... 15, 22

*United States v. Leffler*, 942 F.3d 1192 (10th Cir. 2019)........................................ 14, 28

*United States v. Mason*, 84 F.4th 1152 (10th Cir. 2023).............................................28

*United States v. Mendoza*, 543 F.3d 1186 (10th Cir. 2008) ..............................14, 28, 36

*United States v. Miller*, 307 U.S. 174 (1939) ...................................3, 6, 25, 26, 27, 33

*United States v. Moya*, 5 F.4th 1168 (10th Cir. 2021)...................................................24

*United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) .....................................36

*United States v. Rahimi*, 602 U.S. 680 (2024) ............................................20, 22, 23, 27, 35, 40, 41

*United States v. Rush*, __ F.4th __, 2025 WL 750313 (7th Cir. Mar. 10, 2025) ..........................33

*United States v. Simien*, 655 F. Supp. 3d 540 (W.D. Tex. 2023) ....................................42

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) .......................................................10

*United States v. Walker*, 918 F.3d 1134 (10th Cir. 2019) ......................................... 8, 23

*United States v. Williams*, 893 F.3d 696 (10th Cir. 2018) ................................... 9, 12, 29

*Warnick v. Cooley*, 895 F.3d 746 (10th Cir. 2018) ......................................................24

## Statutes

18 U.S.C. § 922(g)(1) ...........................................................................................................21

18 U.S.C. § 922(g)(8) ...................................................................................................... 40, 41

18 U.S.C. § 922(o) ............................................................................................................ 6, 39

18 U.S.C. § 922(o)(1) .................................................1, 2, 4-14, 19, 23, 25, 26, 30, 33-39, 41-47

18 U.S.C. § 922(o)(2)(A) ...................................................................................................14

18 U.S.C. § 922(o)(2)(B) ...................................................................................................14

26 U.S.C. § 5845(b) ...........................................................................................................14

Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts 76......................................................45

Act of Feb. 23, 1859, ch. 78 § 1, 1859 Ind. Laws 129 ..................................................44

## Other Authorities

10th Cir. R. 28.1(A) ................................................................................... 9, 12, 14, 22, 28

10th Cir. R. 28.3(B) ...........................................................................................................24

Fed.R.Crim.P. 12(b)(3)(B)(v) .............................................................................................2

Issues Pending in The Tenth Circuit, Section XXXII(A), compiled by the Kansas Federal
    Public Defender, available at https://ks.fd.org/sites/ks/files/media-library/issues-
    pending-392025.pdf ...................................................................................................29

U.S. Const. amend. I ..........................................................................................................19

U.S. Const. amend. II .................................. 1-6, 8, 9, 11-13, 15-22, 25-27, 29-36, 38, 42, 43, 46

## PRIOR OR RELATED APPEALS

*United States v. Shobert*, No. 24-8058 (brief filed February 26, 2025) (raising a facial and as-applied challenge to 18 U.S.C. § 922(o)(1)).

*DeWilde v. United States Attorney General*, No. 24-8071 (fully briefed; civil case involving a pro se facial challenge to 18 U.S.C. § 922(o)(1)).[1]

---

[1] The government also cites *Dewilde v. Attorney General*, No. 23-8054 (affirmed April 10, 2024), but that case was resolved almost a year ago.

## ISSUE PRESENTED FOR REVIEW

This government appeal involves a successful as-applied Second Amendment challenge to the federal machinegun-possession prohibition, 18 U.S.C. § 922(o)(1). This Court must resolve whether the district court erred when it concluded that: (1) Tamori Morgan's handheld machineguns are protected by the Second Amendment; and (2) the government failed to meet its burden to prove that section 922(o)(1) is consistent with this Nation's historical tradition of regulating firearms, as applied to Morgan's handheld machineguns.

This is the government's direct criminal appeal from the district court's order granting Mr. Morgan's as-applied Second Amendment challenge to section 922(o)(1)'s machinegun-possession prohibition.

## A. The Indictment

In April 2023, a federal grand jury in Wichita, Kansas returned a two-count indictment, charging Morgan in both counts with the unlawful possession of machineguns under 18 U.S.C. § 922(o)(1). App.7-8.[2]  Count One alleged that Morgan unlawfully possessed "an Anderson Manufacturing, model AM-15 .300 caliber machinegun." App.7. Count Two alleged that Morgan unlawfully possessed "a machinegun conversion device." App.8.

## B. The Motion to Dismiss

Morgan moved to dismiss the indictment on Second Amendment grounds. App.11 (citing Federal Rule of Criminal Procedure 12(b)(3)(B)(v)). He explained that his challenge was an as-applied challenge in that it was limited to his possession of the two machineguns alleged in the indictment. App.13. Citing the Supreme Court's recent opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), Morgan argued that the Second Amendment's plain text covered his possession of the machineguns for self-defense. App.16-17. He further argued that the government would not meet its burden under *Bruen* to prove that prohibiting his possession of the machineguns was consistent with this Nation's historical tradition of firearm regulation. App.18.

---

[2] We cite the Appendix as "App.", the Supplemental Appendix as "Supp.App.", and the government's brief as "Br."

In response, the government appeared to agree that *Bruen*'s framework controlled, but turned to two different Supreme Court precedents – *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *United States v. Miller*, 307 U.S. 174 (1939) – to argue that the Second Amendment's plain text did not protect an individual's right to possess machineguns. App.22-23. According to the government, this was so because the Second Amendment does not protect "dangerous and unusual" weapons that were not "in common use" by "law-abiding citizens for lawful purposes" at the time of the Second Amendment's passage. App.24. The government did not cite any historical sources in support of its argument. App.24-26.

Alternatively, assuming that machineguns were protected by the Second Amendment, the government argued that the machinegun-possession prohibition was constitutional because it was consistent with the Nation's historical tradition of firearm regulation. App.27. This argument was similarly premised on language from *Heller* about "dangerous and unusual weapons." App.27-28. With respect to historical sources, the government only cited passages from Blackstone's Commentaries on the Laws of England and a North Carolina Supreme Court case from 1824. App.27. These two sources discussed "going armed" laws; common-law offenses that prohibited individuals, not from possessing certain weapons for lawful purposes, but from arming themselves "with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people.'" App.27.

In reply, Morgan criticized the government's reliance on an in-common-use-at-the-time-of-adoption test as inconsistent with the Supreme Court's opinion in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), and *Heller* itself, both of which held that the Second Amendment

extends to arms that did not exist at the time of the Second Amendment's adoption. Supp.App.5-6. With respect to whether section 922(o)(1) was consistent with any historical tradition of regulating firearms, Morgan explained that the government's two historical sources were insufficient to meet its burden under *Bruen*, and also disagreed that machineguns qualified as "dangerous and unusual weapons." Supp.App.7-10.

The district court held a hearing to learn more about the "actual details of the firearms" charged in the indictment. App.33. An ATF agent testified that officers viewed a Snapchat video posted on "what appeared to be Mr. Morgan's account of them firing what looked to be a machinegun" in rural Sedgwick County, Kansas. App.36. The officers contacted Morgan, conducted a vehicle search, and found the firearms. App.36, 38. Specifically, the officers found the machine gun conversion device, (or "Glock switch") "in pieces" in an eyeglass case in the glove box. App.38-39, 60. The officers also found a Glock .357 caliber handgun. App.38. The agent testified that the Glock switch was meant to be installed on the handgun. App.38-39. The agent further testified that he viewed a video of Morgan firing an automatic Glock handgun "similar" to the one found in the vehicle. App.39-40.

The officers also found the Anderson Manufacturing machinegun, which the agent described as a "multi-caliber AR pistol." App.40. The agent considered the gun "to be a pistol because it doesn't have a rear stock on it." App.41. It looked like this:



App.63. Agent Paterson admitted that it is generally impossible to tell whether an AR pistol like this one is a semiautomatic or a fully automatic pistol without testing it. App.51. This is so because the guns generally have a "fire control switch" that allows the gun to be toggled from nonautomatic to fully automatic mode. App.51-52. This particular gun was not manufactured to fire automatically, but instead was configured to do so via "a condition called hammer follow," which allows "the hammer to continue to follow through in full automatic fire." App.52. The agent also admitted that it is not unlawful to possess a fully automatic firearm that was registered before May 19, 1986, and that it is not unlawful to possess a fully automatic firearm for some military or law enforcement purposes. App.50.

## C. The Order Granting the Motion to Dismiss

The district court granted Morgan's motion and dismissed the indictment. App.65. The district court did not hold that section 922(o)(1) was facially unconstitutional. Rather, the district court rejected any facial challenge because the statute reaches some fully automatic weapons that would not qualify as "bearable arms" under the Second Amendment. App.67 (discussing an "aircraft-mounted automatic cannon").

The district court instead more narrowly concluded that the Second Amendment covered

the "weapons charged [in the indictment] because they are 'bearable arms' within the original meaning of the amendment." App.65. The district court further concluded that the government "failed to establish that this nation's history of gun regulation justifies the application of 18 U.S.C. § 922(o) to Defendant." App.65. In other words, the district court narrowly held that the Second Amendment protected Morgan's possession of the firearms alleged in the indictment; no more, no less. App.65. And it did so because the government "barely tried," and ultimately failed to meet, its burden under *Bruen*. App.73.

More specifically, the district court held that the machineguns at issue were covered by the Second Amendment because they are "bearable arms within the plain text of the Second Amendment" (i.e., "arms that can be carried in the hand"). App.68. The district court rejected the government's reliance on *Heller* because: (1) the language cited by the government was dicta that predated *Bruen*; and (2) the government's interpretation – that the Second Amendment does not apply to arms that did not exist at the Founding – contradicted *Heller*'s "essential analysis." App.68. The district court also rejected the government's reliance on *Miller* because that case involved a federal registration and taxation scheme, and not a statutory scheme that prohibited the possession of firearms. App.69.

With respect to whether section 922(o)(1) was consistent with our historical tradition of regulating firearms, the district court explained that the government cited "only two potential historical analogs" to meet its burden and that those two examples were "disanalogous to what Defendant is charged with here—simple possession of a machinegun." App.70. Unlike section 922(o)(1), which prohibits mere possession, the government's two historical sources regulated how "arms were carried or displayed," and

generally prohibited "conduct that evinced an intent to breach the peace" or the carrying of firearms "in a manner to terrorize the public with dangerous and unusual weapons." App.69-71. In contrast to the government's historical examples, section 922(o)(1) "requires no more than possession, and, more importantly in an as-applied challenge, the indictment in this case alleges nothing more." App.72.

The district court also concluded that the government failed to prove that machineguns are "dangerous and unusual" weapons, noting that: (1) machineguns have been in existence for over a century; (2) the federal government did not ban their possession until May 19, 1986; (3) there is an exception to this ban, which permits the possession of machineguns that were lawfully possessed prior to May 19, 1986; and (4) there are over 740,000 legally registered machineguns in the United States today. App.72. Because the government "fail[ed] to address these facts," it "fail[ed] to meet its burden to demonstrate that possession of the types of weapons at issue in this case are lawfully prohibited under the Second Amendment." App.73.

In the end, the district court stressed the narrowness of its holding. It noted that its "decision says little about what the government might prove in some future case." App.73. In this case, however, the government simply failed to meet its burden "to identify a historical analog to the restrictions challenged in this case." App.73. The district court "express[ed] no opinion as to whether the government could, in some other case, meet its burden to show a historically analogous restriction that would justify § 922(o)." App.73-74.

The government has timely appealed this ruling.

This Court should affirm the district court's order dismissing the indictment on as-applied Second Amendment grounds. The Second Amendment "presumptively protects," *Bruen*, 597 U.S. at 17, all "arms" that "constitute bearable arms," *Heller*, 554 U.S. at 582, including "modern instruments that facilitate armed self-defense," *Bruen*, 597 U.S. at 28. The machineguns at issue here "can be carried in the hand" to facilitate armed self-defense, App.68, and, thus, are presumptively protected by the Second Amendment. Yet, section 922(o)(1) prohibits the mere possession of Mr. Morgan's handheld machineguns. Because the government failed to meet its burden below to establish a "relevantly similar," "well-established and representative historical *analogue*" to section 922(o)(1), *Bruen*, 597 U.S. at 30, this Court should affirm the district court's dismissal of the indictment.

The government disagrees. It thinks that "[t]he district court's reasoning is flawed" in three respects. Br.31-36. First, the government summarily states that the district court should not have "improperly dismissed" dicta in *Heller* about the National Firearms Act's restrictions on machineguns. Br.31-32. This three-sentence argument is inadequately briefed. This Court should not consider it. *See, e.g.*, *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019). If this Court considers this perfunctory argument, it should reject it because the cited dicta does not involve section 922(o)(1)'s prohibition on possessing machineguns.

Second, the government criticizes the district court for not addressing whether machineguns are "dangerous and unusual weapons" that are "typically possessed" or "in common use" for lawful purposes *today*. Br.10, 32. This criticism is unwarranted, however, because the government did not raise this specific legal theory below. The government

instead argued below that machineguns were "'not in common use at the time' of [the Second Amendment's] *passage*." App.24. The government has abandoned and, thus, waived, this argument on appeal. *See, e.g.*, *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020).

The government has also waived its new legal theory. This Court does not reverse a district court based on a new legal theory when the appellant has made no effort to comply with Tenth Circuit Rule 28.1(A). *See, e.g.*, *United States v. Williams*, 893 F.3d 696, 701 (10th Cir. 2018). This Court also does not reverse based on a new legal theory unless the appellant "attempts to 'run the gauntlet created by our rigorous plain-error standard of review.'" *United States v. Isabella*, 918 F.3d 816, 845 (10th Cir. 2019). The government has neither complied with Tenth Circuit Rule 28.1(A) nor attempted to run the plain-error gauntlet. Thus, this Court should consider its new legal theory waived and decline to address it.

If this Court considers the government's new legal theory as to why the machineguns at issue here are not "arms" under the Second Amendment, it should reject it under the specific circumstances of this case. Because Congress has precluded the possession of newly manufactured machineguns for the last 40 years, the Second Amendment inquiry should not turn solely on whether machineguns are "typically possessed" or "in common use" for lawful purposes today. Moreover, the government's application of its test is inherently flawed, and otherwise unpersuasive, because, *inter alia*, it is not rooted in "the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 26.

Third, the government faults the district court for considering only the two historical sources provided by the government below when determining whether section 922(o)(1) is consistent with our Nation's history of regulating firearms. Br.33-34. That criticism is also

unwarranted because "[c]ourts are [] entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6; *see also United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (recognizing that parties "frame the issues for decision" "in the first instance" (i.e., in the district court), while district "courts [play] the role of neutral arbiter of matters the parties present"). It was the government, and not the district court, who had the responsibility "to uncover and present more useful information" in the district court. *United States v. Chavez*, 976 F.3d 1178, 1203 (10th Cir. 2020).

Moreover, it is the historical record compiled below that this Court should consider when resolving this appeal. *See, e.g.*, *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1474 (10th Cir. 1993) ("'the only proper function of a court of appeals is to review the decision below on the basis of the record that was made before the district court'"). After all, the government's historical sources function as evidence in this context, evidence the government needs to meet its burden to establish the as-applied constitutionality of section 922(o)(1). *Bruen*, 597 U.S. at 60 (it is the government's "burden" to present "historical materials for evidence to sustain" the statute). This Court does not consider new evidence on appeal. *See, e.g.*, *Fleming v. Gulf Oil Corp.*, 547 F.2d 908, 911 (10th Cir. 1977). This rule extends to any legal "documents [the district court] did not have an opportunity to consider." *United States v. Amador-Bonilla*, 102 F.4th 1110, 1117 n.7 (10th Cir. 2024) (refusing to consider statements in the Congressional Record because the statements were not introduced below or included in the record on appeal).

The government does not even attempt to justify section 922(o)(1) as consistent with our Nation's historical tradition of regulating firearms based on the meager historical record it

compiled below. Nor could it. As the district court determined, the two historical sources relied on by the government "are disanalogous to what Defendant is charged with here—simple possession of a machinegun." App.70.

If this Court considers the government's new evidence, *see* Br.23-31, it should still affirm. The government has not come forward with any "relevantly similar," "well-established and representative historical *analogue*" to section 922(o)(1) (as applied in this case). *Bruen*, 597 U.S. at 30. The government points to no evidence indicating a *historical* tradition of prohibiting the mere possession of bearable arms with higher rates of fire. Nor does the government point to any evidence indicating a *historical* tradition of prohibiting the mere possession of such arms as "dangerous and unusual weapons." And while the government points to a *modern* tradition of regulating machineguns, it is that modern tradition – codified in section 922(o)(1) – that is at issue here. Just as the Court in *Heller* did not affirm a modern prohibition on handgun possession based on that modern prohibition, this Court should not affirm Congress's modern prohibition on machinegun possession because of that modern prohibition. That circular reasoning is unsound and would relegate the Second Amendment to the whims of Congress (and other legislative branches). Section 922(o)(1) must be justified based on a *historical* tradition of regulating handheld machineguns. Because the government did not meet its burden to prove such a historical tradition in this case via analogical reasoning, this Court should affirm.

**ARGUMENT**

**The district court correctly held that: (1) the Second Amendment's plain text protects Mr. Morgan's handheld machineguns; and (2) the government failed to meet its burden to prove that section 922(o)(1) is consistent with this Nation's historical tradition of regulating firearms, as applied to Morgan's handheld machineguns.**

## A. Issue Raised and Ruled On

"For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on." 10th Cir. R. 28.1(A). This rule applies to each specific legal theory. *Williams*, 893 F.3d at 700-701 (refusing to consider one of two legal theories because the appellant "omitted a record citation for where this issue had been raised or decided in district court").

The government has not complied with this rule. The government does not include an Issue Raised and Ruled On section within its brief. The government also does not cite any portion of the record in the first five subsections (encompassing the first twenty pages) of its Argument section. Br.11-31. The government only cites the record when discussing the district court's "flawed" reasoning. Br.31-36. But even this section includes only two cites to the "precise reference[] in the record where [an] issue was raised." *See* Br.31-32 (including a record citation to the government's reliance on *Heller*'s dicta); Br.34 (including a record citation to the government's claim below that section 922(o)(1) is consistent with this Nation's historical tradition of regulating dangerous and unusual weapons).

With respect to the **threshold question** of whether Morgan's machineguns are protected by the Second Amendment, the government argued below that machineguns are not protected because machineguns were not in common use at the time *of the Second Amendment's "passage."* App.24. Yet on appeal, the government raises a new legal theory: that machineguns

are not protected by the Second Amendment because machineguns are not in common use *today*. Br.10, 17-23. And with respect to the **ultimate question** of whether section 922(o)(1) is constitutional because it is consistent with this Nation's historical tradition of firearm regulation, the government's legal theory has also shifted. Below, the government relied solely on two historical sources involving "going armed" laws. App.27. On appeal, however, the government relies on "an array of historical laws" (many of which are not "going armed laws") not mentioned below. Br.23-31.

At **the threshold**, the district court rejected the government's in-common-use-*at-the-time-of-the-Second-Amendment's-passage* argument. App.68. But the district court did not address the government's in-common-use-*today* argument because the government didn't make that argument below. Similarly, on **the ultimate question**, the district court ruled that the government failed to meet its burden to establish that section 922(o)(1) (as applied to Morgan's handheld machineguns) is consistent with this Nation's historical tradition of firearm regulation based on the two historical sources cited below. App.70-72. But the district court did not address whether the government had met its burden by relying on other historical sources because the government did not rely on those historical sources below.

## B. Standard of Review

This Court generally reviews de novo as-applied Second Amendment challenges to a federal statute. *United States v. Cox*, 906 F.3d 1170, 1178-1179 (10th Cir. 2018). Unpreserved "federal constitutional arguments made on appeal," however, are reviewed for plain error. *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068, 1082 (10th Cir. 2024); *United States*

*v. Hale*, 762 F.3d 1214, 1224 (10th Cir. 2014) (similar). Plain error principles apply to the government when it is the appellant (as it is here). *United States v. Mendoza*, 543 F.3d 1186, 1191 n.2 (10th Cir. 2008) ("It is a settled proposition in our circuit that the government, like a defendant, may obtain plain error review of an unpreserved claim of error.").

The failure to argue plain error in the opening brief, however, "waive[s] the issue." *Bertels*, 123 F.4th at 1082. This is especially so when the party fails to comply with Tenth Circuit Rule 28.1(A). *United States v. Leffler*, 942 F.3d 1192, 1198-1199 (10th Cir. 2019).

As explained below, the government forfeited some of its legal theories because it did not present them in the district court. It further waived those legal theories by not complying with Tenth Circuit Rule 28.1(A) and by not arguing plain error in its opening brief.

## C. Legal Background

Prior to section 922(o)(1)'s enactment in 1986, Congress did not prohibit the possession of machineguns. Indeed, prior to 1934, Congress did not regulate machineguns at all. And from 1934 to 1986, Congress merely taxed machineguns and required them to be registered via the National Firearms Act. *See* Br.28. Section 922(o)(1) differs from this historical tradition of taxation and regulation and instead prohibits the private possession of any machinegun manufactured after the statute's enactment in 1986. *See* Br.29; 18 U.S.C. § 922(o)(2)(A)-(B).

Although the definition of a "machinegun" is broad, *see* 26 U.S.C. § 5845(b), to be clear, the machineguns at issue in this as-applied challenge are an automatic pistol that can be carried in the hand and a handgun that can be converted to a machinegun via a machinegun

conversion device. *See* App.68. This appeal does not involve any other weapon that might qualify as a machinegun under federal law. [3]

Moving from the applicable statute to the applicable constitutional provision, the Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Although the Second Amendment is centuries old, the Supreme Court has only recently begun to define the contours of this right. The watershed opinion – *Heller* – came in 2008. Before then, it was generally thought that the Second Amendment provided only a right to possess firearms for certain military purposes. *See Heller*, 554 U.S. at 638 (Stevens, J., dissenting) (collecting cases from every federal court of appeals). *Heller* held otherwise and announced an individual right to possess firearms for lawful purposes, including nonmilitary purposes like self-defense. 554 U.S. at 584-586, 594-595, 605, 628-629.

With respect to the types of "arms" protected by the Second Amendment, *Heller* explained that the meaning of the word "arms" is "no different" today than at the Founding.

---

[3] The government does not treat the machinegun conversion device any differently than the machinegun. Nor did the government treat the machinegun conversion device any differently in the district court. App.68 n.1. For instance, the government has not argued below or on appeal that the machinegun conversion device "is a mere accessory unprotected by the Second Amendment." *Id.* And below, the district court expressly found that it was not a mere accessory, but was instead "an integral component of what makes the Glock [handgun] to which it is attached a machinegun." *Id.* The government has not appealed that ruling. Thus, for purposes of this appeal, this Court need not address whether a machinegun conversion device should be treated differently under the Second Amendment than a machinegun. *See, e.g., United States v. Landa-Arevalo*, 104 F.4th 1246, 1255 (10th Cir. 2024) ("where an appellant does not raise the issue in his opening brief, he waives the issue, and we cannot review it").

*Id.* at 581. "Arms" are "'[w]eapons of offence, or armour of defence'"; "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id.* "Arms" include both military and nonmilitary weapons. *Id.* And although the meaning of "arms" has not changed, *Heller* considered as "bordering on the frivolous" any argument "that only those arms in existence in the 18th century are protected by the Second Amendment." *Id.* at 582. Rather, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.*

*Heller* recognized, however, that "the right secured by the Second Amendment is not unlimited," and that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626. The Court turned to history to discuss one "important limitation": "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627. Under this "historical understanding of the scope of the right," "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. But the Second Amendment does protect "arms" "'in common use at the time.'" *Id.* at 627.

*Heller* involved a prohibition on the possession of handguns. *Id.* at 573. *Heller* had no problem concluding that handguns are "arms" protected by the Second Amendment. *Id.* at 628. And because handguns are the "most popular" type of "arms" "chosen by Americans for self-defense in the home, [] a complete prohibition of their use is invalid." *Id.* at 629. In other words, because there is no *historical* tradition of prohibiting the possession of "arms"

typically possessed by law-abiding citizens for lawful purposes, let alone the most popular types of "arms" "in common use" for self-defense, the District of Columbia could not prohibit its residents from possessing handguns. *See id.*

Post-*Heller*, the Supreme Court has reaffirmed "that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.'" *Caetano*, 577 U.S. at 411 (involving stun guns). And because the Second Amendment extends to modern "arms," the Court has confirmed that the Second Amendment inquiry does not turn on whether such "arms" were "in common use at the time of the Second Amendment's enactment." *Id.* (quotation omitted). Nor should modern "arms" be considered "unusual" simply because they did not exist at the Founding. *Id.* at 412.

In *Bruen*, the Court again reaffirmed that, "even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." 591 U.S. at 28. As importantly, *Bruen* announced "the standard for applying the Second Amendment": "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24. The Court explained that this standard merely "reiterated" "*Heller*'s methodology," which "centered on constitutional text and history," *id.* at 22, 24. In the Court's words, "[t]he test that we set forth in *Heller* and apply

today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. "Much like we use history to determine which modern 'arms' are protected by the Second Amendment, so too does history guide our consideration of modern regulations that were unimaginable at the founding." *Id.* at 28.

*Bruen* explained that, "[w]hen confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* To justify a modern firearms regulation, the government must identify a "'relevantly similar," "well-established and representative historical *analogue.*" *Id.* at 29, 30. "Analogical reasoning requires judges to apply faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 29 n.7. When gauging the government's historical analogues, courts should consider "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. Because "'individual self-defense is 'the *central component*' of the Second Amendment right,'" "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*'" considerations when engaging in an analogical inquiry." *Id.*

*Bruen* involved a state statute restricting the ability to carry handguns in public. *Id.* at 11. The Supreme Court held that the Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home," *id.* at 10, and further held that the state failed to meet its burden to establish that the statute was "consistent with this Nation's historical tradition of firearm regulation," *id.* at 34. As discussed below, *Bruen*'s historical analysis is instructive and provides insight into the proper resolution of this appeal.

**D. Discussion**

Under *Bruen*, the **threshold question** is whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 24. For our purposes, this question turns on whether machineguns are considered "arms" under the Second Amendment's plain text. If so, machineguns are "presumptively protect[ed]" by the Second Amendment. *Id.* Courts then turn to the **ultimate question**: "[t]he government must then justify [section 922(o)(1)] (as applied to Morgan's handheld machineguns) by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24.

Consistent with this framework, we first discuss the **threshold question**: whether Morgan's handheld machineguns are "arms" protected by the Second Amendment's plain text. We then turn to the **ultimate question** and explain why the district court did not err when it concluded that the government failed to meet its burden to establish that section 922(o)(1) (as applied here) is consistent with this Nation's historical tradition of firearm regulation.

But first, a word on burdens. *Bruen* plainly and unmistakably puts the burden on the government to justify its regulation as consistent with this Nation's historical tradition of firearm regulation. 597 U.S. at 17, 19. *Bruen* also strongly implies that this burden includes showing whether the defendant's conduct "falls outside of the category of protected" conduct. *Id.* at 24 (discussing First Amendment burdens when explaining that the "Second Amendment standard" adopted in *Bruen* "accords with how we protect other constitutional

rights"). And this is especially true when the government "must generally point to *historical* evidence about the reach of" the constitutional right. *Id.* at 24-25.

Recently, this Court applied "a two-part burden-shifting framework" to a Second Amendment challenge in the civil context. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 113 (10th Cir. 2024). "At step one, the plaintiff has the burden of establishing that 'the Second Amendment's plain text covers' either the conduct they engaged or intended to engage in." *Id.* "If the plaintiff meets this burden, 'the Constitution presumptively protects that conduct.' Should the plaintiff not satisfy this burden, they fail to allege a Second Amendment violation and our analysis ends." *Id.* "If the plaintiff does meet their burden, the burden then shifts to the government to justify its regulation by demonstrating that it is 'consistent with the principles that underpin our' Nation's historical tradition of firearm regulation." *Id.* At least one court of appeals has referred to this as a "heavy burden." *United States v. Daniels*, 124 F.4th 967, 973 (5th Cir. 2025).

This Court stated that this burden-shifting framework was "first established in *Bruen* and later clarified in *Rahimi*."[4]  *Id.* But we cannot find this burden-shifting framework anywhere within *Bruen* or *Rahimi*. As just mentioned above, *Bruen* plainly appears to place the burden on the government, not only to justify its regulation under the Second Amendment, but to establish that a defendant's conduct falls outside of the Second Amendment's protections. 597 U.S. at 17, 19, 24-25. And the government here hasn't suggested that Morgan has any sort of burden like the one mentioned in *Polis*.

---

[4] *United States v. Rahimi*, 602 U.S. 680 (2024).

In any event, we take from *Polis* that it is our burden to establish that Morgan's handheld machineguns are "arms" under the Second Amendment's *plain text*. If we do that, it is then up to the government to muster the necessary historical evidence to establish that section 922(g)(1)'s prohibition on possessing those arms (as applied here) is consistent with this Nation's historical tradition of firearm regulation.

With respect to the government's claim, which is presumably made at **the threshold,** that the handheld machineguns are not "arms" because they are not "typically possessed" or "in common use" for lawful purposes, under *Bruen*, we understand it to be the government's burden to except machineguns from Second Amendment protection under this reasoning. 597 U.S. at 24 (the government's burden includes showing whether the defendant's conduct "falls outside of the category of protected" conduct). After all, this "not typically possessed"/not "in common use" exception is rooted in "the historical understanding of the scope of the right," *Heller*, 554 U.S. at 625, and must be "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* at 627. And it is the government who "must generally point to *historical* evidence about the reach of" the constitutional right to meet its "burden" via "historical materials for evidence to sustain" the statute. 597 U.S. at 24-25, 60; *see also id.* at 28 (courts "use history to determine which modern 'arms' are protected by the Second Amendment"). This is how the district court viewed this particular issue, App.69, and, although the government disagrees with the district court's conclusion, it has not suggested that the district court improperly placed the burden

on the government to prove that machineguns are unprotected for this historically-rooted reason.[5]

1. **Mr. Morgan's handheld machineguns are "arms" under the Second Amendment's plain text.**

On the **threshold question**, this Court should affirm the district court's straightforward plain-text analysis. App.68. The Second Amendment "presumptively protects," *Bruen*, 597 U.S. at 17, all "arms" that "constitute bearable arms," *Heller*, 554 U.S. at 582, including "modern instruments that facilitate armed self-defense," *Bruen*, 597 U.S. The machineguns at issue here are "arms" that "can be carried in the hand" to facilitate armed self-defense, App.68, and, thus, are presumptively protected by the Second Amendment.

The government does not dispute this straightforward analysis. It instead turns from the Second Amendment's actual plain text to the Second Amendment's history and claims that the handheld machineguns are not "arms" under the Second Amendment because they are not "typically possessed" or "in common use" for lawful purposes today. Br.14-23. As explained below, the government has forfeited this legal theory because it did not raise it below, and it has further waived its new legal theory because it has not complied with Tenth Circuit Rule 28.1(A) or argued plain error on appeal. If not waived, the government hasn't established any error (let alone a plain, prejudicial error). Before discussing these two points,

---

[5] *Polis*, which did not involve a dispute about the types of weapons protected by the Second Amendment, was decided after the district court's decision in this case (but before the government filed its brief here). As explained above, it is not clear how *Polis* read *Bruen* and *Rahimi* to establish its burden-shifting framework. Nor has the government argued that this Court should reverse because the district court misapplied the burden or because Morgan didn't meet some burden to establish a Second Amendment violation. Thus, any such argument is waived, and this Court should not consider it. *See, e.g., Landa-Arevalo*, 104 F.4th at 1255.

however, we address the government's perfunctory and undeveloped claim that dicta from *Heller* requires this Court to reverse the district court's decision. This Court should reject that claim as either waived or without merit.

### a. The government has waived any reliance on dicta from Heller. If not, the argument is unpersuasive.

The government summarily claims that "the district court improperly dismissed *Heller*'s statement that it would be 'startling' to conclude that the National Firearms Act's restrictions on machineguns was unconstitutional." Br.31. The government does not explain why, however. It merely notes that the statement is dicta and that Supreme Court dicta is persuasive in this Circuit (at least if it is "recent and not enfeebled by later statements"). Br.31-32. In an apparent effort to establish that this dicta is "not enfeebled by later statements," it cites to an argument it made in the district court – that "nothing in *Bruen* or *Rahimi* disturbed *Heller* or *Miller*" – without any further elaboration on appeal. Br.32.

This Court should consider this inadequately-briefed argument waived. *See, e.g., Walker*, 918 F.3d at 1151 (an appellant waives an argument that is "'inadequately presented' in an opening brief"). The government "has not sufficiently developed the argument to require [this Court's] review." *Schoenhofer v. McClaskey*, 861 F.3d 1170, 1175 (10th Cir. 2017). The government does not explain the context of this dicta from *Heller* or how it relates to section 922(o)(1) (a statute that is not part of the National Firearms Act and that is not even mentioned in *Heller*). Its "few scattered statements . . . fail to frame and develop [the claim] sufficient to invoke appellate review." *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994); *see also Leathers v. Leathers*, 856 F.3d 729, 750 (10th Cir. 2017) (considering a "two or three sentence[]" contention "inadequately briefed and therefore waived"); *United States v.*

*Banks*, 884 F.3d 998, 1009 (10th Cir. 2018) (two-sentence argument that ignored relevant facts was "too cursorily briefed to provide a basis for reversing the district court"); *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (one-page claim that "does not explain why the district court's rationale was mistaken" was waived); *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1274 (10th Cir. 2020) (refusing to address "superficial arguments"); *Eisenhour v. Cnty.*, 897 F.3d 1272, 1279 (10th Cir. 2018) ("The problem with Eisenhour's argument is that she never explains what was wrong with any particular ruling.") *Clark v. Colbert*, 895 F.3d 1258, 1265 (10th Cir. 2018) ("we will not question the reasoning of a district court unless an appellant 'actually argue[s]' against it").

Moreover, the government's attempt to incorporate by reference an argument made in the district court, Br.32, flouts Tenth Circuit Rule 28.3(B) and this Court's precedent, *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-624 (10th Cir. 1998) (rejecting the use of incorporation by reference in appellate briefs). That unacceptable incorporated argument is "waived." *Id.*

As this Court has "said many times . . ., [it] need not manufacture arguments for the litigants before" it. *Clark*, 895 F.3d at 1266-1267 (cleaned up). This Court should not attempt to "fill in the blanks of [the government's] inadequate brief." *Banks*, 884 F.3d at 1024; *see also Cummings v. Dean*, 913 F.3d 1227, 1236 (10th Cir. 2019) ("By providing us with bare assertions rather than analytical guidance, Plaintiffs effectively ask us to 'make arguments for [them] that [they] did not make in [their appellate] briefs,' which we 'will not' do."); *United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) ("we refuse to 'fill the void by crafting

arguments and performing the necessary legal research' for . . . counseled litigants"). It should consider the government's perfunctory reliance on dicta from *Heller* waived.

If not, this Court should not rely on dicta from *Heller* to resolve this appeal. When discussing "what types of weapons *Miller* permits," the Supreme Court stated that it would be "a startling reading of th[at] opinion" to interpret it as reaching "only those weapons useful in warfare" because it would mean that "the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." 554 U.S. at 624.

This dicta says nothing about section 922(o)(1)'s prohibition on possessing machineguns. It only references the National Firearms Act, which is a taxation and registration scheme that does not prohibit the possession of machineguns. *See* App.68-69. Moreover, this dicta is about the meaning of the Court's opinion in *Miller*; it is not about the meaning of the Second Amendment. The Court's point was that, while *Miller* held that the Second Amendment generally protects the possession of military-style small arms in common use, *Miller* did not hold that the Second Amendment protects "only those weapons useful in warfare" or "for certain military purposes" (which is how the dissent interpreted the holding in *Miller*). 554 U.S. at 621, 624; App.68-69. And this portion of *Heller* refers to all machineguns (including things like an "aircraft-mounted automatic cannon," App.67), not just the handheld machineguns at issue here.

Thus, even if it is "startling" to read *Miller* as support for striking down a taxation and registration scheme governing all machineguns by misreading *Miller* as extending Second-Amendment protection only to military-style arms possessed "for certain military purposes,"

this says nothing whatsoever about whether it would also be "startling" to read the Second Amendment as protecting the mere possession of handheld machineguns possessed by law-abiding citizens for lawful nonmilitary purposes like self-defense. Because *Heller*'s dicta discussing *Miller* is not about section 922(o)(1) or the specific "arms" at issue here, this Court should not rely on it to reverse, even if this Court generally considers itself bound by Supreme Court dicta. *See* App.68-69.

It is also worth noting *Heller*'s own criticism of *Miller*. *Heller* noted that *Miller* "did not even purport to be a thorough examination of the Second Amendment." 554 U.S. at 623. The defendants did not file a brief or appear for oral argument in *Miller*. *Id.* "[T]he Court heard from no one but the Government (reason enough, one would think, not to make that case the beginning and the end of this Court's consideration of the Second Amendment)." *Id.* Moreover, the government's brief – which argued that "the only uses of arms protected by the Second Amendment are those that relate to the militia" – "provided scant discussion of the history of the Second Amendment—and the Court was presented with no counterdiscussion." *Id.* at 623-624. And the opinion in *Miller* itself "discusses none of the history of the Second Amendment." *Id.* at 624. *Miller* merely "review[ed] some historical materials dealing with the nature of the militia, and in particular with the nature of the arms their members were expected to possess." *Id.* This criticism of *Miller* itself confirms that *Heller*'s dicta, which is nothing more than a discussion of *Miller*'s holding, should not be considered dispositive in this case.

Finally, it is also worth noting that *Heller* was decided some sixteen years ago, and some fourteen years before *Bruen* announced the standard to be applied in Second Amendment

cases. App.69. Neither *Bruen* nor *Rahimi* reiterate this dicta. *Bruen* only cited *Miller* once, and it did so when noting that *Heller* itself admittedly did not "'undertak[e] an exhaustive historical analysis today of the full scope of the Second Amendment.'" 597 U.S. at 21. And *Rahimi* didn't cite *Miller* at all. Dicta is dicta, whether it is found within a Supreme Court opinion or elsewhere. *Cohens v. State of Virginia*, 19 U.S. 264, 399-400 (1821). It would be a mistake to reverse based solely on *Heller*'s dicta here. *Id.* ("The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.").

### b. The government has waived its new legal theory because it hasn't argued plain error on appeal.

Again, the government argued below that machineguns are not protected by the Second Amendment because they were "'not in common use at the time' of [the Second Amendment's] *passage*." App.24. The district court rightly rejected that argument. App.68; *Caetano*, 577 U.S. at 411. The government has abandoned this argument on appeal.

Instead, the government invokes a new legal theory: handheld machineguns are not protected by the Second Amendment because they are not "typically possessed" or "in common use" for lawful purposes *today*. Br.10, 32. The district court did not address that legal theory because the government didn't present it.

Because the government did not present this new legal theory below, it is considered forfeited on appeal. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) ("a new legal theory [raised] for the first time on appeal" is "forfeited"); *United States v. Barrera-Landa*, 964 F.3d 912, 918 (10th Cir. 2020) (similar). This is so even if one considers

the government's new legal theory related to its now-abandoned legal theory below. *See, e.g.,* *Truman v. Orem City*, 1 F.4th 1227, 1244 (10th Cir. 2021) ("We have consistently rejected the argument that raising a related theory below is sufficient to preserve an issue for appeal."); *United States v. Mason*, 84 F.4th 1152, 1157 (10th Cir. 2023)(same); *Evanston Ins. Co. v. L. Off. of Michael P. Medved, P.C.*, 890 F.3d 1195, 1203 (10th Cir. 2018) ("an argument not presented to the district court is forfeited even if it relates to an argument that was preserved"). After all, "[p]ropounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values. In order to preserve the integrity of the appellate structure, we should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time." *Gale v. City & Cnty. of Denver*, 962 F.3d 1189, 1194 (10th Cir. 2020); *see also United States v. Hernandez*, 847 F.3d 1257, 1269 (10th Cir. 2017) (invoking this reasoning against the government-appellant on appeal); *Richison*, 634 F.3d at 1129-1131 (discussing in detail the rationale behind this forfeiture rule).

As explained above, forfeited claims are generally reviewed for plain error. *See, e.g., Bertels*, 123 F.4th at 1082; *Hale*, 762 F.3d at 1224; *Mendoza*, 543 F.3d at 1191 n.2. The failure to argue plain error in the opening brief, however, "waive[s] the issue." *Bertels*, 123 F.4th at 1082. This is especially so when the party fails to comply with Tenth Circuit Rule 28.1(A). *Leffler*, 942 F.3d at 1198-1199. "If an appellant fails to satisfy this requirement, we may assume the appellant did not preserve the issue for appeal and refuse to review the alleged error." *Id.* at 1196.

As explained in Section A above, the government has not complied with Tenth Circuit Rule 28.1(A). Nor has it attempted to run the plain-error gauntlet. This "failure to argue for

plain error and its application on appeal surely marks the end of the road for an argument not first presented to the district court." *Id.* (cleaned up). Thus, this Court should consider the government's new legal theory waived and decline to address it. *Id.*; *see also Williams*, 893 F.3d at 701 (same); *United States v. Kearn*, 863 F.3d 1299, 1313 (10th Cir. 2017) (similar).[6]

### c. If not waived, the government's new legal theory is unpersuasive.

If this Court considers the government's new legal theory under plain error review, this Court should reject it. According to the government, if a type of firearm is not "typically possessed by law-abiding citizens for lawful purposes" today, *i.e.*, if the type of firearm is not "in common use for lawful purposes" today, that type of firearm is not protected by the Second Amendment. Br.1, 7-10, 14-23. The government includes within this unprotected category any type of firearm that it considers a "dangerous and unusual weapon." Br.4-5, 7, 9, 17, 22. Under this test, the government concludes that machineguns are "dangerous and unusual weapons" that are not "typically possessed" or "in common use" for lawful purposes today because: (1) machineguns "are extraordinarily lethal," Br.18; (2) machineguns "are 'specially adapted to unlawful uses,'" Br.18; (3) machineguns "are 'used readily and efficiently" to commit crimes, Br.19; (4) some states prohibit or regulate their possession, which represents a "nationwide legislative consensus of prohibiting or severely restricting the

---

[6] The government knows about this waiver rule. *See* Issues Pending in The Tenth Circuit, Section XXXII(A), compiled by the Kansas Federal Public Defender, available at https://ks.fd.org/sites/ks/files/media-library/issues-pending-392025.pdf (collecting cases invoking this waiver rule by the government). One of the signatories on the government's brief recently admitted during oral argument that the government argues waiver or forfeiture against defendant-appellants "in almost every case, and we rely on that and fight about that all the time." *United States v. Spradley*, Appeal No. 23-3222 (recording of 01/23/2024 oral argument at 28:40-29:27).

possession of machineguns," Br.19-20; (5) although there are over 175,000 lawful civilian-owned machineguns, this "is a tiny fraction of the 300 million to 500 million privately owned firearms in the United States," Br.20, 21; and (6) it is expensive to purchase a machinegun, Br.21-22.

The government's analysis is unmoored from the standard announced in *Bruen* (and *Heller*) in three critical respects: (1) it does not take into account the fact that section 922(o)(1)'s prohibition has severely restricted the availability of machineguns today (a problem not present in any of the Supreme Court's cases); (2) it considers "dangerous and unusual weapons" as an unprotected category, even though the Supreme Court has only used that phrase when discussing whether challenged statutes are "'fairly supported by *the historical tradition of prohibiting the carrying of* 'dangerous and unusual weapons,'" *Bruen*, 597 U.S. at 21 (emphasis added); and (3) it is not rooted in "the Second Amendment's text and historical understanding," *Bruen*, 597 U.S. at 26. The following explains with respect to each of the government's six points.

The government **first** claims that machineguns are not protected by the Second Amendment because they "are extraordinarily lethal," Br.18. We do not understand this argument to have anything to do with whether machineguns are "typically possessed" or "in common use" for lawful purposes today because even "extraordinarily lethal" weapons are "typically possessed" and "in common use" for lawful purposes today. *See, e.g., Heller v. D.C.*, 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (noting that "semi-automatic rifles are quite common in the United States" and are "commonly used for self-

defense in the home"; "since 1986, . . . about two million semi-automatic AR-15 rifles have been manufactured").

Instead, we understand this argument to mean that Morgan's handheld machineguns are not protected by the Second Amendment simply because the government views them as "dangerous and unusual weapons." As we understand *Heller* and *Bruen*, however, those cases do not hold, at **the threshold**, that the meaning of "arms" under the Second Amendment's plain text does not cover "dangerous and unusual weapons." Those cases instead instruct courts to consider whether statutes that regulate "arms" under the Second Amendment's plain text are nonetheless constitutional because they are "consistent with this Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 34, including "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *Heller*, 554 U.S. at 627. In other words, as the district court concluded, this particular argument "touches on what is now the second step of *Bruen*, rather than the first step," App.69, i.e., the **ultimate question**, and so we address this argument in the next section.

We understand the government's **second** and **third** claims – that machineguns "are 'specially adapted to unlawful uses,'" and "are 'used readily and efficiently' to commit crimes," Br.18-19 – to involve whether Morgan's handheld machineguns are not protected by the Second Amendment because they are "not typically possessed" for lawful purposes. The government gleans this standard from *Polis*'s statement that "the Second Amendment does not extend to weapons . . . adapted for unlawful uses, for instance sawed-off shotguns." 121 F.4th at 116-117. In turn, *Polis* gleaned this standard from Justice Thomas's dissent in *Friedman v. City of Highland Park, Ill.*, 136 S. Ct. 447, 449 (2015), a dissent that argued that

semiautomatic firearms are protected by the Second Amendment because "[t]he overwhelming majority of citizens who own and use such rifles do so for lawful purposes, including self-defense and target shooting."

The implicit premise of the government's argument is that those who possess machineguns do so typically for unlawful purposes. But the government does not cite any statistics to support this premise. The government does not tell us whether any of the hundreds of thousands of machineguns in existence are "typically possessed for lawful purposes." As far as we are aware, they are. We are not aware of any significant history in this Nation of crimes committed with handheld machineguns (whether lawfully registered or not). Rather, "handguns—not 'assault weapons'—'are responsible for the vast majority of gun violence in the United States.'" *Friedman*, 136 S. Ct. at 449 (Thomas, J., dissenting); *see also Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015).

Moreover, the Supreme Court has already rejected the argument that the Second Amendment's protections turn on "public safety implications" like the crime-control implications invoked by the government. *McDonald v. City of Chicago*, 561 U.S. 742, 782 (2010). The Second Amendment does not "differ[] from all of the other provisions of the Bill of Rights because it concerns the right to possess a deadly implement and thus has implications for public safety." *Id.* Indeed, the Second Amendment "is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *Id.* at 783.

It is also telling that the government has made no effort to compare Morgan's handheld machineguns to sawed-off shotguns. Sawed-off shotguns are unprotected by the Second Amendment because members of the Militia were generally prohibited from reporting for service with short-barreled weapons. *Miller* explained that it was "not within judicial notice that [a short-barreled shotgun] is any part of the ordinary military equipment or that its use could contribute to the common defense." 307 U.S. at 178. Rather, "the important enactments concerning military affairs" generally precluded members of the Militia from reporting for service with short-barreled guns. *Id.* at 180-182 (discussing requirements that muskets be a certain length). It is this historical tradition disfavoring the use of guns with modified, shortened barrels that removes sawed-off shotguns from the Second Amendment's protections. *Heller*, 554 U.S. at 624-625; *United States v. Rush*, __ F.4th __, 2025 WL 750313 (7th Cir. Mar. 10, 2025) (same). Without a historical tradition of lawful uses for short-barreled guns, it is reasonable to infer that such guns are "not typically possessed for lawful purposes." *Id.* As explained in the next section, however, the government has not identified any analogous historical tradition related to machineguns or weapons with higher rates of fire. Nor are we aware of one.

Finally, the government has never disputed Morgan's basic claim that he (a law-abiding citizen who is not prohibited from possessing firearms) possessed the handheld machineguns for self-defense, App.16-17. The government's arguments have more to do with a facial challenge to section 922(o)(1), even though the district court did not hold that the statue was facially unconstitutional (nor are we arguing that it is).

We understand the government's **fourth**, **fifth**, and **sixth** claims – that some states prohibit or regulate machinegun possession, that machineguns are "a tiny fraction" of all guns owned in the United States, and that machineguns are expensive to purchase, Br.19-22 – to involve whether machineguns are "in common use" today for lawful purposes. As the government sees it, the "in common use" inquiry turns on the prevalence and availability of machineguns in the United States. But the government does not acknowledge that the prevalence and availability of machineguns, or the lack thereof, is a direct byproduct of section 922(o)(1)'s machinegun-possession prohibition, a prohibition that has existed for the last 40 years (in addition to the other regulations and prohibitions identified by the government). Because of section 922(o)(1)'s prohibition, there are obviously less machineguns today than other types of firearms. But that fact can't possibly remove machineguns from the Second Amendment's reach.

As the Seventh Circuit has said:

> Machine guns aren't commonly owned for lawful purposes today because they are illegal; semi-automatic weapons with large-capacity magazines are owned more commonly because, until recently (in some jurisdictions), they have been legal. Yet it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity.

*Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015). This reasoning is sound, and it applies equally to the government's claims here.

Indeed, it is implausible to think that all "arms" not "in common use" for lawful purposes today are necessarily excluded from Second Amendment protection. Muskets, for instance, are not in common use for lawful purposes today. But they are still protected by

the Second Amendment. *Rahimi*, 602 U.S. at 692 (recognizing that the Second Amendment applies "to muskets and sabers").

The government's arguments all suffer from another overarching problem: they are not rooted in history. The government has done nothing other than advance policy-based reasons why section 922(o)(1) serves legitimate governmental interests. But "we use history to determine which modern 'arms' are protected by the Second Amendment," *Bruen*, 597 U.S. at 28, not "means-end scrutiny," *id.* at 19; *see also United States v. Brown*, ___ F.Supp.3d ___, 2025 WL 429985, at *2 (S.D. Miss. Jan. 29, 2025) (the government's "claims, which focus on the benefits to public safety of a machinegun ban, are policy arguments entitled to no weight"). And again, the government's arguments appear aimed at rebutting a facial attack on section 922(o)(1), not the as-applied challenge at issue in this appeal. For all of these reasons, this Court should hold that the district court did not err when it concluded that Morgan's handheld machineguns are "arms" under the Second Amendment's plain text.

If not, the government still has to satisfy the other three prongs of plain-error review. We do not know how the government can do so. Neither this Court nor the Supreme Court has held that section 922(o)(1) is constitutional in all (or any of) its applications post-*Bruen*, so the error isn't plain. *United States v. Egli*, 13 F.4th 1139, 1146 (10th Cir. 2021). Nor has the government pointed to a post-*Bruen* "consensus in the other circuits." *Id.*; *see* Br.11-12 (citing post-*Bruen* district court cases, not circuit cases). There isn't even a consensus in the district courts. *Brown*, 2025 WL 429985 (also concluding that section 922(o)(1) was unconstitutional as applied in that case).

And even if the error is somehow plain, the government would still have to establish the other two prongs of plain error review. "[B]ut for those extreme cases that clearly implicate miscarriages of justice insulting the public interest, it seems the government will usually be hard-pressed to identify exactly a substantial right that would justify plain error review." *United States v. Jones*, 713 F.3d 336, 351 (7th Cir. 2013). The district court's decision was exceedingly narrow. It stands only for the proposition that Morgan cannot be prosecuted for possessing the handheld machineguns alleged in the indictment. App.73-74. The "decision says little about what the government might prove in some future case," and it leaves open the possibility that the government could meet its burden in a future case. App.73-74. Even if that extremely narrow ruling was plainly erroneous, it does not affect the government's substantial rights or "clearly implicate[] [a] miscarriage of justice insulting the public interest." *Jones*, 713 F.3d at 351; *see also Mendoza*, 543 F.3d at 1194-195 (holding that the government failed to meet the third prong of plain error in that case); *United States v. Munoz-Nava*, 524 F.3d 1137, 1147 (10th Cir. 2008) (same). This Court should affirm the district court's narrow decision that Morgan's handheld machineguns are protected by the Second Amendment's plain text.

2. **The government has failed to meet its burden to establish that section 922(o)(1)'s prohibition against the possession of Mr. Morgan's handheld machineguns is consistent with this Nation's history of firearm regulation.**

On the **ultimate question**, to meet its burden to justify section 922(o)(1)'s prohibition on the possession of Morgan's handheld machineguns, the government relied on only two historical sources below. App.27. On appeal, however, the government relies on "an array of historical laws" numbering in the triple digits. Br.23, iii-xv (13-page table of authorities).

This Court should limit its review to the historical record compiled below. As this Court has held, "'the only proper function of a court of appeals is to review the decision below on the basis of the record that was made before the district court.'" *Allen*, 8 F.3d at 1474. This is especially so here because the government's historical sources function as evidence in this context, evidence the government needs to meet its burden to establish the constitutionality of section 922(o)(1). *Bruen*, 597 U.S. at 60 (it is the government's "burden" to present "historical materials for evidence to sustain" the statute). And this Court does not consider new evidence on appeal, *see, e.g.*, *Fleming*, 547 F.2d at 911, including legal "documents [the district court] did not have an opportunity to consider," *Amador-Bonilla*, 102 F.4th at 1117 n.7.

Moreover, the district court was "entitled to decide [the] case based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6. Contrary to the government's position, the district court was not required to consider the other "dozen sources that *Heller* cited" because the government didn't ask the district court to consider those other dozen sources. *Id.* If the government wanted the district court to consider those sources, it was the government's responsibility to present the sources and make the appropriate argument. *Id.*; *Allen*, 8 F.3d at 1474. The government is again improperly attempting to use this Court as "a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time." *Hernandez*, 847 F.3d at 1269. This Court should not permit it. It should instead review the district court's determination based on the historical record compiled below, without considering the government's new sources cited for the first time on appeal.

a. **Under the historical record compiled below, the government failed to meet its burden to establish that section 922(o)(1) is consistent with this Nation's historical tradition of firearm regulation.**

Below, the government only cited two historical sources: Blackstone's Commentaries on the Laws of England and *State v. Langford*, 3 Hawks 381, 383 (DC 1824). App.27-28. Both sources discussed the "English common law . . . offense of riding or going armed, with dangerous and unusual weapons." App.27. In other words, the government relied on the historical tradition of firearm regulation identified in *Heller*: that of "prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 627 (also citing *Blackstone* and *Langford*).

The district court correctly found, however, that "going armed" laws "are disanalogous to" Morgan's mere possession of handheld machineguns. App.70-71. *Bruen* proves the point. *Bruen* discussed the history of "going armed" laws in detail. 597 U.S. at 40-50. *Bruen* explained that such laws originated with the 1328 Statute of Northampton, which generally provided that "Englishmen could not confront the King's Justices or Ministers . . . with force and arms, nor bring no force in affray of the peace, nor to go nor ride armed by night nor by day . . . upon pain to forfeit their Armour to the King, and their Bodies to Prison at the King's pleasure." *Id.* at 40. But this ancient English statute "has little bearing on the Second Amendment adopted in 1791." *Id.* at 41. The statute's focus was on armour, and possibly weapons like launcegays (a long lance), arms "generally worn or carried only when one intended to engage in lawful combat or—as most early violations of the Statute show— to breach the peace." *Id.* There is "no evidence suggesting the Statute applied to the smaller medieval weapons" that are similar to bearable arms like handguns and the pistol at issue here. *Id.* at 41-42.

*Bruen* further explained that the Statute "had largely become obsolete through disuse" by the Seventeenth Century. *Id.* at 43. By the time of the Founding, "going armed" laws (like the one discussed in *Langford*) required proof of "evil intent or malice" "to terrify the People." *Id.* at 44, 45. *Bruen* expressly rejected the argument that "going armed laws" merely meant "being 'armed offensively' [or] bearing any offensive weapons" or "'dangerous and unusual weapons.'" *Id.* at 46. "Far from banning the carrying of any class of firearms, they merely codified the existing common-law offense of bearing arms to terrorize the people, as had the Statute of Northampton itself." *Id.* at 47; *see also* App.70-72.

These "going armed" laws are not a "relevantly similar," "well-established and representative historical *analogue*" to section 922(o)(1) (especially as applied to Morgan's handheld machineguns), *Bruen*, 597 U.S. at 30. Section 922(o)(1) prohibits the mere possession of handheld machineguns (anywhere and everywhere); it "says nothing about the manner in which machineguns are carried or displayed." App.72. "If an individual purchases such a weapon and locks it away in a gun safe in his basement for twenty years without touching it, he is just as guilty of a violation of § 922(o) as one who takes the same weapon out on the public streets and displays it in an aggressive manner." App.72. Section 922(o)(1) also does not have an evil-intent element, and the government need not prove that a defendant terrorized anyone to obtain a conviction under the statute. All that is required is knowing possession of a post-1986 machinegun.

From this, it is clear that there is no connection (i.e., no analogy) between "how and why" section 922(o)(1) and "going armed" laws "burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. Section 922(o)(1) burdens the right to armed self-

defense by prohibiting the possession of a specific type of weapon that could be used effectively for self-defense. "Going armed" laws do not burden the right to self-defense by prohibiting the possession of certain firearms; they simply prohibit individuals from terrorizing others with "dangerous and unusual weapons." Such laws "might support the prosecution of a person charged with terrorizing others with a machinegun. Yet they provide no support for the prosecution of Mr. [Morgan]. The government does not allege that he did anything against the 'public peace.' Mr. [Morgan] was not 'armed offensively,' nor was he attempting to terrorize the 'good citizens.'" *Brown*, 2025 WL 429985, at *3.

It is also important to recognize that Morgan's handheld machineguns look no different than semiautomatic weapons and handguns in common use for lawful purposes today. They simply function differently. As the government's expert testified below, the only way to tell the difference between such automatic and non-automatic weapons is to test-fire the weapons. App.51. Thus, to the extent that "going armed" laws could be thought of as prohibiting the possession of "dangerous and unusual" weapons that look terrifying and, thus, might terrify another person, that logic doesn't hold here either. The disconnect becomes even greater.

The government tries to get around all of this by noting that *Rahimi* upheld a firearms possession statute based in part on "going armed" laws. Br.35. But that is because the statute at issue in *Rahimi*, 18 U.S.C. § 922(g)(8), prohibited a certain type of person from possessing firearms: "an individual subject to a domestic violence restraining order," 602 U.S. at 684, based on a "finding that the defendant 'represents a credible threat to the physical safety' of his intimate partner or his partner's child." *Id.* at 688. And *Rahimi* himself had a long and

troubling history of terrorizing others with firearms. *Id.* at 686-688. From this, the Court reasoned: "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms. As applied to the facts of this case, Section 922(g)(8) fits comfortably within this tradition." *Id.* at 690.

Section 922(o)(1) does not prevent individuals who threaten physical harm to others from misusing firearms; it prohibits everyone from possessing handheld machineguns for lawful purposes like self-defense. Morgan is also not Rahimi. Rahimi is a menace to society, 602 U.S. at 686-688; Morgan is a law-abiding citizen who is otherwise free to possess firearms. *Rahimi* does nothing to support the government's position in this case.

That leaves the government's argument on appeal that "extraordinarily lethal" weapons should be considered "dangerous and unusual weapons." Br.18, 32. But we know of no historical tradition of prohibiting the mere possession of handheld firearms simply because they might be considered "extraordinarily lethal." The Supreme Court has only identified a possible historical tradition of "prohibit[ing] the carrying of dangerous and unusual" weapons, a standard that does not appear to be tied in any way to lethality. *Id.* at 47. And again, section 922(o)(1) is different; it prohibits the possession of handheld machineguns for lawful purposes like self-defense; its reach extends well beyond the lethal use of such guns.

The reality is that *any* firearm is "extraordinarily lethal" if used to kill. And that includes semiautomatic firearms in common use today that function identically as Morgan's handheld machineguns. *Garland v. Cargill*, 602 U.S. 406, 406 (2024) ("other guns – not prohibited by Congress – can fire many rounds; 'Using a technique called bump firing, shooters can fire

semiautomatic firearms at rates approaching those of some machineguns.'"). If handguns, which "'are responsible for the vast majority of gun violence in the United States,'" *Friedman*, 136 S. Ct. at 449 (Thomas, J., dissenting), are not too lethal to lose Second Amendment protection, handheld machineguns, which similarly are possessed for lawful purposes like self-defense, should not lose such protection either. *See Brown*, 2025 WL 429985, at *5 ("firearms can be dangerous and constitutionally protected").

Moreover, the district court was right to conclude that, even if handheld machineguns are considered "dangerous," and even with section 922(o)(1)'s 40-years-and-running prohibition on machinegun possession, machineguns are still not "unusual." App.72-73. Rather, machineguns have been in existence for over a century; the federal government did not ban their possession until May 19, 1986; there is an exception to this ban, which permits the possession of machineguns that were lawfully possessed prior to May 19, 1986; and there are over 740,000 legally registered machineguns in the United States today. App.72.

The government's response is to claim that most of these machineguns are registered to government entities, with "fewer than 176,000 of those legally registered machineguns in civilian hands." Br.35 (citing *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016)). But this still means that around "one in 1,908 civilians owns a machinegun." Br.35-36. And the government has only identified twelve states and the District of Columbia that prohibit machinegun possession entirely. Br.19. Moreover, a more recent case, citing a government brief, indicates that "the number of civilian-owned machineguns has increased to about 740,000." *United States v. Simien*, 655 F. Supp. 3d 540, 553 (W.D. Tex. 2023), consistent with the district

court's findings below, App.72. And these numbers do not include unregistered machineguns (like Morgan's). *Brown*, 2025 WL 429985, at *4.

Even if it is difficult and expensive to purchase a machinegun because of laws like section 922(o)(1), Br.22, 36, the district court did not clearly err when it found that machineguns are not "unusual" today. *See*, *e.g.*, *Caetano*, 577 U.S. at 420 (Alito, J., concurring) (concluding that stun guns are protected by the Second Amendment because there are around 200,000 civilian-owned stun guns that can be lawfully possessed in 45 states; referring to stun guns as "widely owned and accepted as legitimate means of self-defense across the country"); *Maloney v. Singas*, 351 F. Supp. 3d 222, 237-238 (E.D.N.Y. 2018) (evidence that 64,890 nunchakus were sold on the retail market in the United States between 1995 and 2018 sufficient to establish that such weapons are protected by the Second Amendment); *Avitabile v. Beach*, 368 F. Supp. 3d 404, 411-412 (N.D.N.Y. 2019) (evidence of 300,000 privately-owned tasers was sufficient to establish that such weapons are protected by the Second Amendment); *Brown*, 2025 WL 429985, at *4 ("Three-quarters of a million of any kind of firearm is plainly widespread."). The district court was right to conclude that the government failed to meet its burden below.

> **b. Even if this Court considers the government's new evidence, it should still affirm.**

The government's new historical evidence is no more persuasive than the historical record compiled below. For instance, the government cites additional "going armed" laws and historical sources that discuss those laws. Br.23-26. But those sources add nothing. For the reasons discussed above, common-law "going armed" laws are not "relevantly similar," "well-established and representative historical analogue[s]" to section 922(o)(1) (as applied in

this case). *Bruen*, 597 U.S. at 30. And although the government claims that these laws "contemplated that it would naturally constitute affray to carry dangerous and unusual weapons," Br.26, *Bruen* expressly rejected that proposition as a "misunderstand[ing] [of] these statutes." 597 U.S. 47 ("Far from banning the carrying of any class of firearms, they merely codified the existing common-law offense of bearing arms to terrorize the people, as had the Statute of Northampton itself.").

The government summarily cites around thirty-five 19th-century state laws (from 1837 to 1893) that apparently banned the possession, sale, carry, or concealed carry of things like knives, slung shots, brass knuckles, and billy clubs. Br.26. But the government doesn't provide any insight into these statutes or explain how any of them are "relevantly similar," "well-established and representative historical analogue[s]" to section 922(o)(1) (as applied in this case). *Bruen*, 597 U.S. at 30. Apparently the government thinks it can cite thirty-five centuries-old statutes in two footnotes, and this Court will do the work in trying to analogize the statutes to section 922(o)(1). But it doesn't work that way. *Bedolla-Zarate v. Sessions*, 892 F.3d 1137, 1141 (10th Cir. 2018) ("We decline to engage in an analysis of state statutes because the issue has not been adequately briefed."); *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961, 985 n.8 (10th Cir. 2020) ("we will not construct an argument for [the appellant], particularly when any such argument (if viable at all) would involve complicated and nuanced constitutional considerations").

The government does not bother to mention that at least one of the statutes included an element that the defendant have "the intent or avowed purpose of injuring his fellow man." Act of Feb. 23, 1859, ch. 78 § 1, 1859 Ind. Laws 129; *see also* Act of Feb. 2, 1838, ch. 101, § 1,

1838 Va. Acts 76 (including an element that "this use of which the death of any person might probably ensue"). If that statute is "relevantly similar" to section 922(o)(1), we don't know how. Nor has the government made any effort to confirm that the statutes themselves are constitutional. *Bruen* itself recognized that the 1837 Georgia statute cited by the government is unconstitutional because it prohibited the open (as opposed to concealed) carry of weapons. 597 U.S. at 54. That recognition is also a plain recognition that the states could not simply ban the possession of things like knives and daggers, *Id.*, as the Supreme Court of Kentucky expressly held, *Bliss v. Kentucky*, 12 Ky. 90, 90, 93 (Ky. 1822) (declaring unconstitutional a state statute prohibiting the carrying of "a pocket pistol, dirk, large knife, or sword in a cane").

As best we can tell, this laundry list of state statutes involved concealed carry bans, and, to the extent that courts upheld the bans against constitutional challenges, they did so only because the laws "prohibit[ed] only a *particular mode* of bearing arms which is found dangerous to the peace of society." *State v. Jumel*, 13 La. Ann. 399, 400 (1858) (upholding the constitutionality of the Louisiana statute cited by the government). In other words, it wasn't because the weapons were "dangerous and unusual"; it was because the mode of bearing the weapons was "dangerous to the peace of society." *Id.* If section 922(o)(1) is analogous to concealed carry bans, the government doesn't even attempt to explain the point.

The government also summarily cites prohibitions on "trap guns." Br.27. We do not understand why the government thinks that a "trap gun" is analogous to a handheld machinegun. Rigging a gun to fire on its own is simply not analogous to the use of a handheld machinegun for lawful purposes like self-defense.

Turning to the Twentieth century, the government tells us that, between 1925 and 1934, "at least half the states" enacted "anti-machinegun laws, including comprehensive bans." Br.27-28. The government does not bother to identify the number of "comprehensive bans," but we know that only 13 jurisdictions (and the federal government) have comprehensive bans today. Br.19. This is not the type of "historical tradition" that justifies a complete prohibition on handheld machineguns. After all, it is "evidence of 'how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century' [that] represent[s] a 'critical tool of constitutional interpretation.'" *Bruen*, 597 U.S. at 35. This is so because what matters is "*the public understanding* of [the Second Amendment] after its ratification." *Id.* (ellipsis omitted). *Id.* "[T]o the extent later history contradicts what the text says, the text controls." *Id.* at 36. *Bruen* itself refused to address "20th-century historical evidence." *Id.* at 67 n.28. This Court should too. And not just because it is too recent to shed light on the Second Amendment's public understanding at the time of ratification, but because the government's 20th-century sources don't establish a tradition of prohibiting machinegun possession. Those sources establish a patchwork of laws with no discernible through-point.

What the government needs is a "relevantly similar," "well-established and representative historical *analogue*" to section 922(o)(1) (as applied here). *Bruen*, 597 U.S. at 30. But the government does not cite any persuasive analogous historical tradition of regulating firearms based on their rates of fire (or any other "relevantly similar" characteristic).

The district court got it right. This very well might be a class-of-one case. It's entirely possible that the government will meet its burden in other as-applied section 922(o)(1) challenges. But it didn't here. This Court should affirm.

## CONCLUSION

This Court should not strike section 922(o)(1) as unconstitutional. But it should affirm the district court's narrow decision and hold that the government failed to meet its burden to prove the constitutionality of section 922(o)(1) as applied to Morgan's handheld machineguns.

## ORAL ARGUMENT STATEMENT

The government has asked for oral argument. We agree that oral argument would be helpful in this appeal.

Respectfully submitted,

MELODY BRANNON
Federal Public Defender

By: s/ Daniel T. Hansmeier
DANIEL T. HANSMEIER
Appellate Chief
Kansas Federal Public Defender
U.S. Courthouse
500 State Avenue, Ste. 201
(913) 551-6712
daniel_hansmeier@fd.org

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

The undersigned certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(5) & (7)(B) in that it contains 12,996 words in a proportionally spaced typeface (13-point Garamond; as allowed by 10th Circuit Rule 32(a)), as shown by Microsoft Word 2016, which was used to prepare this brief.

s/ Daniel T. Hansmeier
DANIEL T. HANSMEIER
Appellate Chief

Dated: March 14, 2025

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that on March 14, 2025, he electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. Because opposing counsel is a registered CM/ECF user, he will also be served by the CM/ECF system. 10th Cir. R. 31.5. Pursuant to 10th Circuit Rule 31.5, 7 hard copies will be mailed to the Clerk of the Court at:

Mr. Christopher Wolpert, Clerk of the Court
Tenth Circuit Court of Appeals
1823 Stout Street
Denver, CO 80257

A copy of the brief will also be mailed to Mr. Morgan.

s/ Daniel T. Hansmeier
DANIEL T. HANSMEIER
Appellate Chief
Kansas Federal Public Defender
500 State Avenue, Suite 201
Kansas City, KS 66101
913-551-6712
daniel_hansmeier@fd.org